

01
02 **UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
03
04 **JERRY SOPER III, individually and on behalf of all others similarly situated,**
05 Plaintiff,
06
07 v.
08
09 **AIRTALK WIRELESS, a Texas corporation,**
10 Defendant.
11
12 **Case No.: [To Be Assigned]**                    2:25-cv-02064-UA
13 **CLASS ACTION COMPLAINT**
14 **Jury Trial Demanded**
15
16
17
18 **CLASS ACTION COMPLAINT**
19
20 **Plaintiff Jerry Soper III**, by and through undersigned counsel (if retained), brings this class action against
21 Defendant AirTalk Wireless ("AirTalk") for fraudulent misrepresentation, breach of contract, and violations of
22 Proposed Amendment XXVIII to the U.S. Constitution. Plaintiff seeks relief for himself and a nationwide
23 class of Lifeline recipients subjected to AirTalk's deceptive practices, including substandard service,
24 undisclosed throttling, overbilling, and device downgrades.
25
26 **JURISDICTION AND VENUE**
27 1. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question), as claims arise under Amendment
28 XXVIII, and 28 U.S.C. § 1332(d) (Class Action Fairness Act), with minimal diversity, a class exceeding 100
29 members, and damages over $5,000,000.
30 2. Venue is proper under 28 U.S.C. § 1391(b)(2), as a substantial part of the events occurred in this district
31 (Plaintiff resides at 711 N. Alameda St., Los Angeles, CA 90012), and AirTalk conducts business nationwide,
32 including here.
33
34 **PARTIES**
35 3. **Plaintiff Jerry Soper III** is an individual residing at a temporary homeless shelter with address 711 N.
36 Alameda Street, Los Angeles, CA 90012, a Lifeline recipient under the federal program administered by the
37 FCC.
38 4. **Defendant AirTalk Wireless** is a Texas corporation with a principal place of business at 10700 N Freeway
39 Service Rd., Houston, TX 77099, providing wireless services under Lifeline and AT&T Mobility wholesaling
40 network capacity.
41
42 **FACTUAL ALLEGATIONS**
43 5. On February 10, 2025, Plaintiff paid AirTalk $39.95 for its "Lifeline Unlimited Plan," advertised as
44 "Unlimited High Speed 5G+ Internet" on a "leading 4G LTE/5G network" (AirTalk website, accessed Feb 24,
45 2025).
46 6. Post-upgrade, Plaintiff's service delivered 0.2Mbps download/1.6Mbps upload (Speedtest, Feb 23, 2025,
47 20:47 PST) and 0.50Mbps (prior tests), with diagnostics showing 3G/EDGE connectivity (CMC 310, CMNC
48 280), despite his iPhone 12 Pro Max's 5G NR capability (4Gbps down/200Mbps up, per Apple specs, Feb 14,
49 2025).
50 7. AirTalk's Terms and Conditions (TOCs, accessed Feb 23, 2025) cap "unlimited" data at 40GB, after which
51 speeds "may be reduced" to undisclosed levels—here, 0.2-0.50Mbps, 1/1000th of 5G+ capacity (1Gbps+ per
52 AT&T 5G+ specs) and below FCC broadband (25Mbps down/3Mbps up, 2015).
53 8. Plaintiff's billing reflects $30/month with a $9.25 Lifeline discount (Feb 23, 2025), yet he was charged
54 $39.95 (receipt, Feb 10, 2025, 4:15pm PST), indicating overbilling of $9.95 claiming the Lifeline discount
55 was already used.
56

Jerry Soper III v AirTalk Wireless, et al.                                    United States District Court

9. Plaintiff ordered an iPhone SE2 (Order CO-1739232917-SYS, Jan 17, 2025), but received an iPhone 8 (Feb 23, 2025), unsupported by Apple updates post-2025, after AirTalk canceled and reshipped his original order.

10. Plaintiff filed FCC complaints: Ticket #7663813 (Feb 20, poor speed/fraud), #7671565 (Feb 22, limited capacity), #7674634 (Feb 24, outdated standards). The FCC sought clarification (Feb 20, 13:49 PST) but has not resolved these despite Plaintiff's replies (Feb 20, 14:05; Feb 24, 14:17, 20:16).

11. An AT&T tower (34.054183, -118.238296, 86.9m from Plaintiff's address) supports 5G N77 (80MHz), with a second tower (34.0512, -118.2437, 0.5mi away) confirming 5G+ availability—Plaintiff's 1.6Mbps upload disproves "congestion."

12. AirTalk's practices affect millions of Lifeline users (Plaintiff's Feb 24 email, 13:44 PST: "millions of consumers"), who receive substandard speeds (e.g., 0.2-0.50Mbps) despite identical advertising.

**CLASS ALLEGATIONS**

13. Plaintiff seeks certification of a class under Fed. R. Civ. P. 23(a) and (b)(3):

   **Class Definition**: All U.S. Lifeline recipients who purchased AirTalk Wireless's "Lifeline Unlimited Plan" (or similar plans) from January 1, 2022, to March 5, 2025, and received speeds below FCC broadband (25Mbps) despite "high speed 5G+" advertising.

14. **Numerosity**: The class includes millions (Feb 24, 13:44 PST), making joinder impracticable.

15. **Commonality**: Common questions include: (a) Did AirTalk misrepresent "high speed 5G+"? (b) Did throttling violate Amendment XXVIII? (c) Did overbilling and device swaps constitute fraud?

16. **Typicality**: Plaintiff's claims—0.2-0.50Mbps, $39.95 overcharge, iPhone 8 swap—mirror the class's experience under AirTalk's uniform TOCs and practices.

17. **Adequacy**: Plaintiff will fairly represent the class, with no conflicts, supported by extensive evidence (Speedtests, FCC tickets, billing).

18. **Predominance and Superiority**: Common legal issues (fraud, Amendment XXVIII violations) predominate, and a class action is superior to individual suits given the class size and modest individual damages.

**CAUSES OF ACTION**

**Count I: Violation of Amendment XXVII – Section 1 (Equality Before the Law)**

19. AirTalk's 0.2-0.50Mbps service denies Plaintiff and the class equal access to broadband, a modern necessity (FCC, 2016), compared to AT&T's 68.81Mbps average (OpenSignal, Feb 14, 2025) or T-Mobile's $40/line (100Mbps+). Feb 24, 13:44: "ability to pay should not hinder access."

20. This violates Section 1's mandate of equal rights for all humans, disproportionately burdening indigent Lifeline users.

**Count II: Violation of Amendment XXVIII – Section 2 (No Rights for Non-Human Entities)**

21. AirTalk, a non-human entity, conceals throttling (0.2-0.50Mbps) and its AT&T wholesale deal (Feb 20, 13:49: "excess capacity") in TOCs, lacking constitutional rights to do so.

22. Section 2 mandates transparency, which AirTalk defies, harming Plaintiff and the class.

**Count III: Violation of Amendment XXVIII – Section 5 (Restrictions and Enforcement)**

23. Throttling to 0.2-0.50Mbps restricts broadband rights without "imminent and substantial harm" or "clear and present evidence" (Feb 23: 1.6Mbps upload, 5G towers at 86.9m, 0.5mi).

24. AirTalk's overbilling ($39.95 vs. $30) and device swap (iPhone 8) lack justification—Feb 14, 14:05: "accounting fraud."

**Count IV: Fraudulent Misrepresentation**

25. AirTalk's "Unlimited High Speed 5G+ Internet" claim is false—0.2-0.50Mbps isn't high-speed (FCC: 25Mbps; 5G+: 1Gbps+). Feb 21, 21:15: "unacceptable."

26. Plaintiff and the class relied on this, suffering substandard service, overcharges, and device downgrades.

**Count V: Breach of Contract**

27. AirTalk's contract promised "high speed 5G+" but delivered 0.2-0.50Mbps, breaching its terms. Plaintiff paid $39.95 expecting 25Mbps+ (FCC standard), not dial-up speeds.

**CLASS ACTION COMPLAINT NOTICE MOTION FOR PRELIMINARY INJUNCTION EX PARTE SEAL**

Jerry Soper III v AirTalk Wireless, et al.                           United States District Court

**RELIEF REQUESTED**
WHEREFORE, Plaintiff, individually and on behalf of the class, requests:
A. Certification of the class under Fed. R. Civ. P. 23;
B. Injunction requiring AirTalk to:
   1. Deliver minimum 25Mbps service to all class members;
   2. Disclose throttling speeds and AT&T wholesale terms;
   3. Replace subpar devices (e.g., iPhone 8 with iPhone SE2);
C. Damages:
   1. Refund of overcharges (e.g., $39.95-$30 = $9.95 per class member);
   2. Compensatory damages of $500 per class member for fraud (Feb 24, 13:44: "exorbitant prices");
   3. Punitive damages for willful misrepresentation;
D. Attorneys' fees and costs;
E. Trial by jury;
F. Other relief as the Court deems just.

**VERIFICATION**
I, Jerry Soper III, declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge. Executed on March 5, 2025, in Los Angeles, CA.

/s Jerry Soper III
Jerry Soper III

**ATTORNEY INFORMATION**
[To be completed by counsel upon retention]

**CLASS ACTION COMPLAINT NOTICE MOTION FOR PRELIMINARY INJUNCTION EX PARTE SEAL**

Case 2:25-cv-02064-UA    Document 1    Filed 03/05/25    Page 4 of 97   Page ID #:4

Jerry Soper III v AirTalk Wireless, et al.                    United States District Court

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**JERRY SOPER III, individually and on behalf of the public,**
Plaintiff,

v.

**AIRTALK WIRELESS, a Texas corporation, and ALL CORPORATIONS CONDUCTING PRE-EMPLOYMENT DRUG TESTING IN THE UNITED STATES,**
Defendants.

**Case No.: [To Be Assigned]**
**MOTION FOR PRELIMINARY INJUNCTION**
**Hearing Date: [To Be Set]**
**Judge: [To Be Assigned]**

Jerry Soper III v AirTalk Wireless, et al.                    United States District Court

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**JERRY SOPER III, individually and on behalf of the public,**
Plaintiff,

v.

AIRTALK WIRELESS, a Texas corporation, and ALL CORPORATIONS CONDUCTING PRE-EMPLOYMENT DRUG TESTING IN THE UNITED STATES,
Defendants.

**Case No.: [To Be Assigned]**
**MOTION FOR PRELIMINARY INJUNCTION**
**Hearing Date: [To Be Set]**
**Judge: [To Be Assigned]**

## MOTION FOR PRELIMINARY INJUNCTION

**Plaintiff Jerry Soper III**, pro se (or by counsel if retained), moves under Fed. R. Civ. P. 65 to enjoin Defendant AirTalk Wireless and all U.S. corporations ("Defendants") from conducting pre-employment drug testing that screens for all medications, including prescriptions. Plaintiff, terminated from United Airlines (April 23, 2022) and having applied to over 300 jobs—many with federally funded employers requiring such testing—asserts this invades privacy, violates Amendment XXVIII, breaches HIPAA, and risks ADA discrimination. Plaintiff seeks injunctive relief, compensatory and punitive damages, and systemic protections.

## INTRODUCTION
1. Plaintiff, at 711 N. Alameda St., Los Angeles, CA 90012, challenges a pervasive practice: corporate drug testing exposing PHI—e.g., Plaintiff's Biktarvy (HIV) and Vyvanse (ADHD)—to entities with no rights to it (Amendment XXVIII, Section 2), risking unequal treatment (Section 1) and violating HIPAA and ADA.
2. Since his wrongful termination from United Airlines (federally funded, drug-testing employer), Plaintiff has applied to 300+ jobs (Declaration, ¶¶ 3-5). His AirTalk experience (0.2-0.50Mbps, Feb 23, 2025) exemplifies corporate overreach.
3. Plaintiff seeks broad relief to protect millions (Feb 24, 13:44: "millions of consumers"), including punitive damages for Defendants' willful misconduct.

## FACTUAL BACKGROUND
4. Plaintiff, a Lifeline recipient, was terminated from United Airlines on April 23, 2022, a federally funded employer with drug testing (Declaration, ¶ 2). Since then, he's applied to over 300 jobs—governmentjobs.com, usajobs.gov, LinkedIn—many tied to federal grants requiring broad screening (Declaration, ¶ 3).
5. In March 2025, Plaintiff intends to apply to AirTalk and others (Declaration, ¶ 5). AirTalk's practices—0.2-0.50Mbps despite "5G+" (Speedtest, Feb 23), $39.95 overcharge (Feb 10 vs. $30/mo), iPhone 8 swap (Feb 23)—mirror industry deceit (FCC Tickets #7663813, #7671565, #7674634).
6. Corporate testing screens for all medications, revealing Plaintiff's Biktarvy and Vyvanse (Declaration, ¶ 6, under seal), risking denial for HIV or ADHD treatment despite lawful use and plans to switch to Cabenuva and Sunlenca.

## LEGAL STANDARD
7. Preliminary injunction requires: (1) likelihood of success; (2) irreparable harm; (3) balance of equities; (4) public interest (Winter v. NRDC, 555 U.S. 7, 20 (2008)).

**CLASS ACTION COMPLAINT NOTICE MOTION FOR PRELIMINARY INJUNCTION EX PARTE SEAL**

Jerry Soper III v AirTalk Wireless, et al.                     United States District Court

**ARGUMENT**
 **A. Likelihood of Success on the Merits**
8. **Amendment XXVIII – Section 2**: Defendants lack rights to PHI. Testing for all medications—e.g., Plaintiff's Biktarvy (HIV), Vyvanse (ADHD)—exceeds safety needs, invading human privacy (Declaration, ¶ 6). Section 2 bars this absent consent limited to illegal drugs.
9. **Amendment XXVIII – Section 1**: Testing risks unequal treatment—Plaintiff's HIV or ADHD meds could bar him from jobs others secure, violating equality "irrespective of… any characteristic" (Declaration, ¶ 8). United Airlines' testing history underscores this (Declaration, ¶ 2).
10. **HIPAA**: Defendants aren't covered entities (45 C.F.R. § 164.508) and lack authority to demand PHI— e.g., Biktarvy, Vyvanse—without specific consent, breaching privacy (Cal. Civ. Code § 56.10).
11. **ADA**: Broad testing isn't job-related or necessary (42 U.S.C. § 12112(d)(2)), risking discrimination against Plaintiff's HIV or ADHD (Declaration, ¶ 6; EEOC, 1995).
12. AirTalk's fraud (Feb 20, 13:49: "fraudulently hidden") suggests systemic PHI misuse (Declaration, ¶ 7), warranting punitive damages for willful disregard.

Jerry Soper III v AirTalk Wireless, et al.                    United States District Court

**B. Irreparable Harm**

13. Testing forces Plaintiff to disclose PHI—e.g., HIV meds—or abandon 300+ job prospects (Declaration, ¶¶ 4, 8). Privacy loss is permanent (Carpenter, 138 S. Ct. 2206), and economic/emotional harm acute for an indigent applicant (Feb 20, 13:49).

Jerry Soper III v AirTalk Wireless, et al.                    United States District Court

**C. Balance of Equities**

14. Plaintiff's privacy, job access, and dignity outweigh Defendants' interest. Narrow screening for illegal drugs suffices—Section 2 denies PHI rights.

Jerry Soper III v AirTalk Wireless, et al.                    United States District Court

**D. Public Interest**
15. Relief, including punitive damages, protects millions from privacy invasions and discrimination—e.g., for HIV or ADHD meds (Feb 24, 13:44)—upholding Amendment XXVIII, HIPAA, and ADA, deterring corporate overreach.

Jerry Soper III v AirTalk Wireless, et al.                              United States District Court

**RELIEF REQUESTED**
WHEREFORE, Plaintiff requests:
A. A preliminary injunction enjoining Defendants from:
   1. Conducting pre-employment drug testing screening all medications, including prescriptions;
   2. Using, retaining, or disclosing PHI (e.g., Biktarvy, Vyvanse) obtained from such tests;
B. An order:
   1. Limiting testing to illegal substances only, pending resolution;
   2. Requiring Defendants to destroy any existing PHI collected from Plaintiff and others via broad testing within 30 days;
   3. Mandating Defendants to submit compliance reports to the Court every 90 days during pendency, detailing testing policies and PHI handling;
C. A declaratory judgment that:
   1. Defendants have no right under Amendment XXVIII, Section 2, to screen for prescription medications;
   2. Such testing violates Plaintiff's and the public's equality rights under Section 1;
D. Damages:
   1. Compensatory damages of $10,000 for Plaintiff for privacy invasion and emotional distress from facing 300+ testing barriers since April 23, 2022 (Declaration, ¶ 8);
   2. Punitive damages of $50,000 for Plaintiff, reflecting Defendants' willful and reckless disregard for human privacy and equality across a systemic practice affecting millions (Feb 24, 13:44), with AirTalk's deceit (Declaration, ¶ 7) as exemplar;
   3. Additional damages as determined at trial for ongoing harm;
E. Costs and fees under applicable law;
F. Other relief as the Court deems just.

Jerry Soper III v AirTalk Wireless, et al.                          United States District Court

**SUPPORTING DOCUMENTS**
- Declaration of Jerry Soper III (attached, ¶ 6 under seal).
- Exhibits: FCC Tickets (#7663813, #7671565, #7674634), Speedtest (Feb 23), AirTalk TOCs (Feb 23), billing (Feb 10, Feb 23).

Executed on March 5, 2025, in Los Angeles, CA.

/s Jerry Soper III
Jerry Soper III

Jerry Soper III v AirTalk Wireless, et al.                    United States District Court

01
02
03
04
05
06
07
08
09
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51
52
53
54
55
56

**CERTIFICATE OF SERVICE**
I certify that on March 5, 2025, I served this motion on AirTalk Wireless via certified mail to 10700 N Freeway Service Rd., Houston, TX 77099, and will serve other Defendants via publication notice (Fed. R. Civ. P. 4), filing it with the Court.

/s Jerry Soper III

Jerry Soper III v AirTalk Wireless, et al.                    United States District Court

01
02
03
04
05
06
07
08
09
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51
52
53
54
55
56

**EXHIBIT A: AirTalk evidence (FCC tickets #7663813, #7671565, #7674634; Speedtest, Feb 23; TOCs, Feb 23)**

**CLASS ACTION COMPLAINT NOTICE MOTION FOR PRELIMINARY INJUNCTION EX PARTE SEAL**

Jerry Soper III v AirTalk Wireless, et al.                    United States District Court

**EXHIBIT B - DECLARATION BY JERRY SOPER III**

as an example, plus a declaration of your intent to apply for jobs (March 2025) and PHI use (under seal if needed).

Jerry Soper III v AirTalk Wireless, et al.                    United States District Court

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**JERRY SOPER III, individually and on behalf of the public,**
Plaintiff,

v.

**AIRTALK WIRELESS, a Texas corporation, and ALL CORPORATIONS CONDUCTING PRE-EMPLOYMENT DRUG TESTING IN THE UNITED STATES,**
Defendants.

**Case No.: [To Be Assigned]**
**EX PARTE MOTION TO SEAL PORTIONS OF DECLARATION OF JERRY SOPER III**
**[NO HEARING REQUESTED UNLESS OPPOSED]**

Jerry Soper III v AirTalk Wireless, et al.                   United States District Court

## EX PARTE MOTION TO SEAL PORTIONS OF DECLARATION OF JERRY SOPER III

**Plaintiff Jerry Soper III**, pro se (or by counsel if retained), moves ex parte under Fed. R. Civ. P. 5.2 and Local Rule 79-5, pursuant to Local Rule 7-19, to seal Paragraph 6 of his Declaration of Jerry Soper III, filed in support of his Motion for Preliminary Injunction against AirTalk Wireless and all U.S. corporations conducting pre-employment drug testing. This paragraph contains sensitive medical information constituting Protected Health Information (PHI) under HIPAA (45 C.F.R. § 164.508), and immediate sealing is necessary to prevent irreparable harm to Plaintiff's privacy upon filing.

## EX PARTE NOTICE

## TO DEFENDANT AIRTALK WIRELESS AND ALL CORPORATIONS CONDUCTING PRE-EMPLOYMENT DRUG TESTING IN THE UNITED STATES, AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that Plaintiff submits this ex parte motion for immediate relief without prior notice or hearing, per Local Rule 7-19, due to the urgent need to protect sensitive PHI from public disclosure upon filing his Motion for Preliminary Injunction on March 5, 2025. Defendants may file opposition within 24 hours of service (Local Rule 7-19.1), and Plaintiff requests no hearing unless opposed, to expedite resolution.

This motion is based on this Notice, the Motion below, the Declaration of Jerry Soper III (redacted public version and unredacted version under seal), supporting memorandum, all pleadings on file, and any argument if ordered.

## MOTION TO SEAL
## INTRODUCTION
1. Plaintiff, at 711 N. Alameda St., Los Angeles, CA 90012, seeks to enjoin Defendants from drug testing that screens for all medications, exposing his PHI—e.g., Biktarvy (HIV) and Vyvanse (ADHD)—to entities with no rights under Amendment XXVIII, Section 2 (filed concurrently in Motion for Preliminary Injunction).
2. Paragraph 6 of Plaintiff's Declaration details his prescription medications and medical plans, critical to proving privacy harm but requiring immediate sealing to avoid public exposure upon filing.

## LEGAL STANDARD
3. Fed. R. Civ. P. 5.2(a)(3) permits sealing sensitive health information. Local Rule 79-5.1 allows sealing for "good cause" (less than compelling reasons for non-dispositive motions), balancing public access against privacy (Kamakana v. City of Honolulu, 447 F.3d 1172, 1178-79 (9th Cir. 2006)).
4. Local Rule 7-19 permits ex parte relief where: (a) irreparable harm is imminent; (b) notice is impractical or prejudicial; and (c) no significant burden exists for the opposing party.

## ARGUMENT
## A. Good Cause Exists to Seal Paragraph 6
5. Paragraph 6 identifies Plaintiff's medications—Biktarvy (current HIV treatment), Vyvanse (current ADHD treatment), and planned switch to Cabenuva and Sunlenca (HIV treatments)—constituting PHI under HIPAA (45 C.F.R. § 164.508).
6. Public disclosure risks irreparable harm:
   a. **Stigma**: HIV and ADHD carry severe stigma, threatening Plaintiff's 300+ job applications since April 23, 2022 (Declaration, ¶ 3), beyond Defendants' testing.
   b. **Privacy Loss**: Once filed publicly, PHI cannot be reclaimed (Carpenter v. United States, 138 S. Ct. 2206 (2018)), devastating Plaintiff, an indigent Lifeline recipient (Declaration, ¶ 1).
   c. **Retaliation**: Plaintiff's AirTalk disputes (Feb 20, 13:49: "fraudulently hidden") heighten fears of PHI misuse if exposed (Declaration, ¶ 7).
7. The information proves Plaintiff's PHI is at risk, but specifics (drug names, plans) are unnecessary for public understanding of the legal issue—corporate testing's privacy invasion.

**CLASS ACTION COMPLAINT NOTICE MOTION FOR PRELIMINARY INJUNCTION EX PARTE SEAL**

Jerry Soper III v AirTalk Wireless, et al.                                    United States District Court

**B. Ex Parte Relief Is Warranted**

8. **Imminent Harm**: Filing the Declaration on March 5, 2025, without sealing exposes PHI instantly, causing immediate, irreparable harm before a noticed hearing (28 days per Local Rule 6-1). Plaintiff's ongoing job search (Declaration, ¶ 5) and PHI sensitivity (¶ 6) demand urgency.

9. **Notice Impractical/Prejudicial**: Notifying Defendants (AirTalk and all U.S. corporations) before filing is impractical—service via publication for the broader group takes weeks (Fed. R. Civ. P. 4)—and risks preemptive PHI exposure if Defendants access the docket first. AirTalk's certified mail service (March 5) won't prejudice this request.

10. **No Burden to Defendants**: Sealing Paragraph 6 doesn't affect Defendants' ability to oppose the injunction—unsealed portions (Declaration, ¶¶ 1-5, 7-9) detail the claim fully. No substantive rights are impaired; only Plaintiff's privacy is at stake.

**C. Redaction Insufficient**

11. Redacting drug names (e.g., "Plaintiff uses [redacted]") implies HIV and ADHD, risking inference. Sealing Paragraph 6 ensures full protection while allowing Court review.

**D. Public Interest Favors Sealing**

12. The public's interest—corporate overreach affecting millions (Feb 24, 13:44)—is preserved in unsealed portions. Sealing Paragraph 6 safeguards Plaintiff without obscuring the issue.

**PROCEDURE**

13. Plaintiff submits:
  a. A redacted public version (Paragraph 6 as "[SEALED PER COURT ORDER]");
  b. An unredacted version under seal, lodged per Local Rule 79-5.2.2(c), marked "Lodged Conditionally Under Seal."

14. This complies with Local Rule 79-5.2, with ex parte justification per Local Rule 7-19.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff requests:
A. An ex parte order sealing Paragraph 6 of the Declaration of Jerry Soper III;
B. Permission to file a redacted public version and an unredacted sealed version;
C. Costs and fees as permitted;
D. Ruling without hearing unless opposed, with opposition due within 24 hours of service (Local Rule 7-19.1);
E. Other relief as the Court deems just.

Dated: March 5, 2025
Los Angeles, CA

/s Jerry Soper III
Jerry Soper III
711 N. Alameda St.
Los Angeles, CA 90012
soperiiijerry@gmail.com
(213) 421-1958

**CERTIFICATE OF SERVICE**

I certify that on March 5, 2025, I served this Ex Parte Motion on AirTalk Wireless via certified mail to 10700 N Freeway Service Rd., Houston, TX 77099, concurrently with the Motion for Preliminary Injunction, and will serve other Defendants via publication notice (Fed. R. Civ. P. 4) upon Court approval, filing it with the Court. Notice is waived for ex parte relief due to urgency (Local Rule 7-19).

**/s Jerry Soper III**

 **Gmail**

**Jerry Soper III <superiiijerry@gmail.com>**

---

## Re: FCC # 7663813 - Jerry Soper - AirTalk Wireless
2 messages

---

**Escalation Team** <1948702870@tickets.helpdesk.com>                    Thu, Feb 27 at 14:39
Reply-To: <1948702870+u40qwa@tickets.helpdesk.com>
To: <superiiijerry@gmail.com>



Hello Jerry,

We would like to begin by extending our sincerest apologies for the
delay in our response. We have been experiencing a significant
volume of calls and emails; however, please be assured that we are
diligently working to address the concerns that have been reported.

We would like to inform you that the verification process was
conducted based on an email you previously sent to us. It is important
to emphasize that each time we communicate with our customers, we
verify their personal information to ensure that we are engaging with
the correct party.

In response to your complaint, we would like to inform you that the
observed slow data speeds may be influenced by various factors,
including weather conditions, geographical location, structural
obstructions, and network congestion. Being situated in remote areas,
within certain buildings, or utilizing data services during peak usage
times may contribute to reduced speeds. These factors are beyond
our control; however, relocating to a more open area may improve
your experience. We would also like to draw your attention to the fact

that this information is detailed in our **Terms and Conditions,
specifically in Section 8, which addresses Factors Affecting Data
Speeds** (https://airtalkwireless.com/terms-conditions).

Should you require any further assistance, please do not hesitate to
respond to this email.

Sincerely,
Executive Escalations Team
AirTalk Wireless

Ticket ID: U40QWA
Assigned agent: Jessica

**PREVIOUS MESSAGES:**

**soperiiijerry@gmail.com wrote:**

The last 4 digits of a consumers social security number should never
be
contained in a non secure form that is emailed because it could be
intercepted by nefarious individuals acting maliciously. Why is it
displayed by an automated email with other sensitive information
needed to
steal one's identity financially? What in the actual fuck?

Jerry Soper III
soperiiijerry@gmail.com

CONFIDENTIALITY NOTICE: Please note that the correspondence
and the
information contained in this message may be confidential and
protected
from disclosure (W&I Code Section 5328 and MH 5671 HIPAA
Privacy Rule CFR

Section 164.508) and/or legally privileged information. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are
hereby notified that any unauthorized interception, review, use of disclosure, dissemination, distribution or copying of this communication is
strictly prohibited and may violate applicable laws. If you are not the intended recipient, please contact the sender at (213) 421-1958, and destroy all copies of the communication. In the event the protected confidential message option is forgotten due to human error, this notice
still applies as the content is strictly for the eyes of the addressee or to whom the email body is addressed should the email address be entered
incorrectly.

Fri, 2/21/2025, 9:54 PM UTC

**Jessica wrote:**

Hello Jerry Soper,

This is AirTalk Wireless, we are reaching out to you, as we are in receipt of an informal complaint filed with the Federal Communications Commission regarding AirTalk Wireless.

The FCC acts as a mediator to facilitate communication between the consumer and the provider. In response to your complaint, the FCC has requested us to contact you.

Your FCC Complaint states the following:
"Nowhere during the process of upgrading service does it state that

the upgrade is not effective immediately and the plan is changed to reflect unlimited High Speed data. Per the binary implied terms between high speed and low speed data and the FCC definition of high speed, the speed reached post upgrade is not achieved as upload and download speeds are only 0.41Mbps download and 0.39Mbps upload consistently when performing a Speedtest on the AT&T network using the downloaded carrier setting configuration profile for AirTalk Wireless a MVNO reseller of AT&T wholesale service deduced and confirmed when visiting the cellular settings and the APN displays ereseller. This is unacceptable for Network capable speeds, congestion or otherwise limiting the throughput of a paid customer. They double dip when being paid by the government and the customer. Just because a customer is not paying for the service the service is still paid for by the government as a benefit to those who cannot afford to pay for the service on their own. Payment of money is based on religious practices because the money has printed on it "IN GOD WE TRUST" and has no business infringing on human rights and freedom to enjoy those rights at the same time in the same manner as fast as each other human because knowledge is power and accessing it is a universal human right. One speed up and down for the same price. Cannot afford it? It doesn't matter it shall be provided to you equally among all humans because it's a universal resource for all to enjoy at the same time. AirTalk. AirTalk has wholesale contract with AT&T to resell network services. Contract presumably had wording like "excess network capacity" resold to customers on federal benefit programs at no cost to them. Advertising or commuting fraud by concealing that remaining capacity does not exist to provide high speed per FCC definitions even though "on a leading LTE/5G network" because the remaining capacity is only 0.50Mbps download and equal upload. Reselling substandard services because their customers are prioritized with advertised capacity at technology spectrum as approved under the license issued by the FCC for the spectrum indicated as 4GLTE or 5G+. A consumer without this knowledge is unaware of what they are actually paying for because it is fraudulently hidden and buried in contracts they cannot see and lack the knowledge of how the technology actually works in order to file a complaint. If the capacity does exist

then it is limited and or throttled so that the customers with the capability to pay full price for services get the best experience possible so they continue to pay the exorbitant prices. Have millions of consumers of your service and the CEO makes millions. If they can charge $40 per line for same features when having 4 lines then they are still making profit at $40 per line. Jacking up the price when only needing one line to $90 means they are marking up because they can and all other carriers do the same thing when not transparent with their costs. How much does the government pay in their contracts. Required maximum is 30% markup over cost. Why do consumers pay more? Why is consumer where government pays treated differently? How much does government pay for service? There are no more tolls for long distance and travel over copper lines. Everything automated less employees manually switching switchboards connecting calls. Now digital signals. Capacity increased when dark fiber laid but nobody filing to do work to lay dark fiber so not making network capacity increase so why they still charging high prices? This goes for Spectrum also and "non telecom". FCC needs to remove tele from communications to force cable service providers into submission when digital signals provide data services (temporarily claim jurisdiction because they provide phone services via voice over IP). Save yourself by redefining now. Less legal problems later. Fix definitions. You are the Federal Communications Commission after all, not only telecommunications per you manual and policies. You're welcome. Don't let them legally weasel out because your title to the section says telecommunications and non telecommunications are undefined. Revise your rulebook. Easy approval from commission."


In response to your complaint, we will be contacting you shortly to address your concerns. Please expect a call from the number 805-633-1580.

Sincerely,
Executive Escalations Team
AirTalk Wireless

Fri, 2/21/2025, 4:22 PM UTC

**Thuy Nguyen wrote:**

Hey, Jerry Benjamin Soper III
Email: soperiiijerry@gmail.com
Phone: ▬▬▬▬▬
Enrollment ID:
Birthday: ▬▬▬▬▬
SSN: ▬▬▬▬
Subject: Other
Content: I ordered an iPhone SE2 and was delivered an iPhone 8, please fix and I will return the iPhone 8. Your delivery confirmation says I received an iPhone SE2.

Sat, 1/25/2025, 6:39 AM UTC

Sincerely,

Customer Support Team

This email is delivered by **HelpDesk**

---

**Escalation Team** <1948702870@tickets.helpdesk.com>                           Sun, Mar 2 at 14:40
Reply-To: <1948702870+u40qwa@tickets.helpdesk.com>
To: <soperiiijerry@gmail.com>



Hello! It looks like we haven't heard from you in a while. If you still need assistance, please let us know. Otherwise, we'll close this ticket shortly. Thank you!

Ticket ID: U40QWA
Assigned agent: Jessica

**PREVIOUS MESSAGES:**

**Jessica wrote:**

Hello Jerry,

We would like to begin by extending our sincerest apologies for the delay in our response. We have been experiencing a significant volume of calls and emails; however, please be assured that we are diligently working to address the concerns that have been reported.

We would like to inform you that the verification process was conducted based on an email you previously sent to us. It is important to emphasize that each time we communicate with our customers, we verify their personal information to ensure that we are engaging with the correct party.

In response to your complaint, we would like to inform you that the observed slow data speeds may be influenced by various factors, including weather conditions, geographical location, structural

obstructions, and network congestion. Being situated in remote areas, within certain buildings, or utilizing data services during peak usage times may contribute to reduced speeds. These factors are beyond our control; however, relocating to a more open area may improve your experience. We would also like to draw your attention to the fact that this information is detailed in our Terms and Conditions, specifically in Section 8, which addresses Factors Affecting Data Speeds (https://airtalkwireless.com/terms-conditions).


Should you require any further assistance, please do not hesitate to respond to this email.


Sincerely,
Executive Escalations Team
AirTalk Wireless

Thu, 2/27/2025, 10:39 PM UTC


**soperiiijerry@gmail.com** **wrote:**

The last 4 digits of a consumers social security number should never be
contained in a non secure form that is emailed because it could be intercepted by nefarious individuals acting maliciously. Why is it displayed by an automated email with other sensitive information needed to
steal one's identity financially? What in the actual fuck?

Jerry Soper III
soperiiijerry@gmail.com

CONFIDENTIALITY NOTICE: Please note that the correspondence and the

information contained in this message may be confidential and protected
from disclosure (W&I Code Section 5328 and MH 5671 HIPAA Privacy Rule CFR
Section 164.508) and/or legally privileged information. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are
hereby notified that any unauthorized interception, review, use of disclosure, dissemination, distribution or copying of this communication is
strictly prohibited and may violate applicable laws. If you are not the intended recipient, please contact the sender at (213) 421-1958, and destroy all copies of the communication. In the event the protected confidential message option is forgotten due to human error, this notice
still applies as the content is strictly for the eyes of the addressee or to whom the email body is addressed should the email address be entered
incorrectly.

Fri, 2/21/2025, 9:54 PM UTC

**Jessica wrote:**

Hello Jerry Soper,

This is AirTalk Wireless, we are reaching out to you, as we are in receipt of an informal complaint filed with the Federal Communications Commission regarding AirTalk Wireless.

The FCC acts as a mediator to facilitate communication between the consumer and the provider. In response to your complaint, the FCC has requested us to contact you.

Your FCC Complaint states the following:

"Nowhere during the process of upgrading service does it state that the upgrade is not effective immediately and the plan is changed to reflect unlimited High Speed data. Per the binary implied terms between high speed and low speed data and the FCC definition of high speed, the speed reached post upgrade is not achieved as upload and download speeds are only 0.41Mbps download and 0.39Mbps upload consistently when performing a Speedtest on the AT&T network using the downloaded carrier setting configuration profile for AirTalk Wireless a MVNO reseller of AT&T wholesale service deduced and confirmed when visiting the cellular settings and the APN displays ereseller. This is unacceptable for Network capable speeds, congestion or otherwise limiting the throughput of a paid customer. They double dip when being paid by the government and the customer. Just because a customer is not paying for the service the service is still paid for by the government as a benefit to those who cannot afford to pay for the service on their own. Payment of money is based on religious practices because the money has printed on it "IN GOD WE TRUST" and has no business infringing on human rights and freedom to enjoy those rights at the same time in the same manner as fast as each other human because knowledge is power and accessing it is a universal human right. One speed up and down for the same price. Cannot afford it? It doesn't matter it shall be provided to you equally among all humans because it's a universal resource for all to enjoy at the same time. AirTalk. AirTalk has wholesale contract with AT&T to resell network services. Contract presumably had wording like "excess network capacity" resold to customers on federal benefit programs at no cost to them. Advertising or commuting fraud by concealing that remaining capacity does not exist to provide high speed per FCC definitions even though "on a leading LTE/5G network" because the remaining capacity is only 0.50Mbps download and equal upload. Reselling substandard services because their customers are prioritized with advertised capacity at technology spectrum as approved under the license issued by the FCC for the spectrum indicated as 4GLTE or 5G+. A

consumer without this knowledge is unaware of what they are actually paying for because it is fraudulently hidden and buried in contracts they cannot see and lack the knowledge of how the technology actually works in order to file a complaint. If the capacity does exist then it is limited and or throttled so that the customers with the capability to pay full price for services get the best experience possible so they continue to pay the exorbitant prices. Have millions of consumers of your service and the CEO makes millions. If they can charge $40 per line for same features when having 4 lines then they are still making profit at $40 per line. Jacking up the price when only needing one line to $90 means they are marking up because they can and all other carriers do the same thing when not transparent with their costs. How much does the government pay in their contracts. Required maximum is 30% markup over cost. Why do consumers pay more? Why is consumer where government pays treated differently? How much does government pay for service? There are no more tolls for long distance and travel over copper lines. Everything automated less employees manually switching switchboards connecting calls. Now digital signals. Capacity increased when dark fiber laid but nobody filing to do work to lay dark fiber so not making network capacity increase so why they still charging high prices? This goes for Spectrum also and "non telecom". FCC needs to remove tele from communications to force cable service providers into submission when digital signals provide data services (temporarily claim jurisdiction because they provide phone services via voice over IP). Save yourself by redefining now. Less legal problems later. Fix definitions. You are the Federal Communications Commission after all, not only telecommunications per you manual and policies. You're welcome. Don't let them legally weasel out because your title to the section says telecommunications and non telecommunications are undefined. Revise your rulebook. Easy approval from commission."

In response to your complaint, we will be contacting you shortly to address your concerns. Please expect a call from the number 805-633-1580.

Sincerely,
Executive Escalations Team
AirTalk Wireless

Fri, 2/21/2025, 4:22 PM UTC

**Thuy Nguyen wrote:**

Hey, Jerry Benjamin Soper III
Email: soperiiijerry@gmail.com
Phone:
Enrollment ID:
Birthday:
SSN:
Subject: Other
Content: I ordered an iPhone SE2 and was delivered an iPhone 8,
please fix and I will return the iPhone 8. Your delivery confirmation
says I received an iPhone SE2.

Sat, 1/25/2025, 6:39 AM UTC

Sincerely,

Customer Support Team

[Quoted text hidden]

 Gmail

**Jerry Soper III <superiiijerry@gmail.com>**

## Request updated: Billing on Post-Paid Accounts

**FCC** <consumercomplaints@fcc.gov>                                    Mon, Jan 13 at 04:34
Reply-To: FCC <consumercomplaints@fcc.gov>
To: Superiiijerry <superiiijerry@gmail.com>

The FCC's Consumer Inquiries and Complaints Center is contacting you about the complaint you filed recently, which was assigned Ticket No. 7575720.

Thank you for your submission. Following our review, your complaint was served on your provider on January 13, 2025.

Here is what you can expect from the FCC's informal complaint process:

- Your provider should contact you directly in an effort to resolve your issue.

- The FCC's role in this process is to facilitate a conversation between you and your provider.

- Your provider is required to submit to the FCC a written response regarding your issue no later than 30 days from today.

- The FCC will not contact you regarding this complaint until we receive a response from your provider.

You can view a list of frequently asked questions about the informal complaint process at:
https://www.fcc.gov/consumercomplaints/FAQs.

[1DY0RR-P6Z5D]

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

Plaintiff, JERRY BENJAMIN SOPER III, PRO SE IN PROPRIA PERSONA FORMA PAUPERIS
v.

Defendant(s), United States of America also known as United States

NOTICE OF INTENT TO FILE COMPLAINT CHALLENGING LAKEN RILEY ACT AS
UNCONSTITUTIONAL AND REVISED COMPLAINT FOR IMMEDIATE INJUNCTIVE RELIEF AND
OTHER RELIEF INCLUDING MONEY AND DAMAGES

ALL TAKE NOTICE:
The Plaintiff hereby provides notice of intent to file this complaint. Should the Defendants fail to remedy the
constitutional violations herein by March 2, 2025, at 23:59:59 PST, this lawsuit commences immediately in
this Court on March 3, 2025, at 00:00:01 PST, incurring legal fees and costs.  This version supersedes any
version previously filed.

/S JERRY BENJAMIN SOPER III, PRO SE

Dated: March 2, 2025

Modified Date: March 2, 2025, 11:45 AM PST (PDT)

Page 1 of 14

[revised using grok.ai; remaining lines 29-56 left intentionally blank on this
page]

## PARTIES

1.  Plaintiff, Jerry Benjamin Soper III, resides in California and the United States, a citizen of both as an individual Person and one of the People within U.S. borders.

2.  Defendant, United States, is the collective union of member States enacting laws and policies, including the Laken Riley Act, affecting all People within its jurisdiction.

3.  Plaintiff requests certification of a class of "all People within U.S. borders harmed by segregating laws or enforcement," to be added as co-plaintiffs, numbering potentially millions.

## PLAINTIFF'S HARM

4. Plaintiff has suffered direct, ongoing harm from Defendant's segregating policies and enforcement, including:

   a. False arrest and restraining order (Case 23V000721, Superior Court of California, Orange County) stripping Second Amendment rights without due process, tied to malicious prosecution (details infra, p. 11).

   b. False arrest, kidnapping, and false imprisonment by Officer Wilson (Huntington Beach Police) for defective trespassing charges (CA Penal Code § 602(m)), misidentifying Plaintiff and evicting him from legal possession (zip code 92648 vs. 92647), with stolen property and active bench warrant (details infra, p. 11).

   c. False arrest and excessive force by Buena Park Police, fracturing Plaintiff's C2-C3 vertebrae, with illegal firearm seizure (CA Penal Code § 602(o)), denying rights to life, liberty, and property (details infra, p. 12).

5. These injuries exemplify Defendant's pattern of unequal enforcement, amplified by laws like the Laken Riley Act, violating Plaintiff's constitutional rights and those of the class.

## JURISDICTION AND VENUE

6. Jurisdiction arises under 28 U.S.C. § 1331 (federal question—U.S. Constitution).

7. Venue is proper under 28 U.S.C. § 1391(b)—substantial events occurred in this district.

Page 2 of 14

[revised using grok.ai; remaining lines 36-56 left intentionally blank on this page]

## PURPOSE AND SCOPE

8. This lawsuit seeks to restore equal rights to all People within U.S. borders, per the Constitution's intent, by challenging segregating laws like the Laken Riley Act and proposing Amendment XXVIII (Exhibit A) as the remedy.

9. Scope includes repealing or redefining any law, amendment, or policy outside the Constitution's original equality framework that limits rights or creates subclasses.

## LAKEN RILEY ACT: UNCONSTITUTIONAL SEGREGATION

10. The Laken Riley Act (LRA) requires the Department of Homeland Security to detain immigrants admitting to, charged with, or convicted of theft, assault on police, or crimes causing death/serious injury (e.g., DUI).

11. LRA violates equal protection (14th Amendment) by:
    a. Targeting a subclass—immigrants—without uniform application to all People, creating inequality.
    b. Lacking due process specificity, inviting abusive enforcement (e.g., Plaintiff's false arrests, p. 11-12).
    c. Contradicting Amendment XXVIII, Section 1 (Exhibit A), mandating one equal "People" class.

12. LRA exemplifies Defendant's pattern: policies segregate rather than equalize, causing harm (e.g., Plaintiff's injuries, p. 2).

## REQUEST FOR JUDICIAL NOTICE

13. Plaintiff requests incorporation by reference:
    a. Oxford Languages Dictionary.
    b. U.S. Constitution, Amendments, Bill of Rights, Declaration of Independence.
    c. Federal Register, U.S. laws, state laws, legislative Acts, and supporting evidence.
    d. Peace officer manuals, criminal proceedings, California/federal records.

14. Plaintiff requests judicial clarification: People's rights trump non-human entities; conflicting laws yield to greater protections.

Page 3 of 14

```
[revised using grok.ai; remaining lines 33-56 left intentionally blank on this
page]
```

**FACTUAL ALLEGATIONS**

15. The Constitution's intent, per its founders, was equal rights for all People within U.S. borders, forming a "more perfect union" free of monarchy-style subclassifications (e.g., Declaration of Independence).

16. Non-human entities (corporations, agencies) lack constitutional rights; only People hold them (Amendment XXVIII, Section 2, Exhibit A).

17. Defendant's laws—e.g., Immigration Act of 1912, Defense of Marriage Act (repealed), Laken Riley Act—segregated People by race, gender, origin, violating this intent.

18. Prohibition (18th Amendment, repealed by 21st) and drug bans (p. 9-10) limit rights enjoyment, spawning black markets and unequal enforcement, not safety.

19. Plaintiff's harms (p. 2) show this pattern: policies enable oppressive acts under color of law, denying equality.

**COUNT I: UNFAIR BUSINESS PRACTICES CAUSING HARM**

20. Plaintiff realleges all prior paragraphs.

21. Defendant's actions—enacting segregating laws (LRA, drug bans)—constitute unfair practices under California and U.S. law, prioritizing non-human entities (e.g., police, corporations) over People.

22. Result: Plaintiff and class suffer economic loss (stolen property), emotional distress, and rights violations, worsened by unequal enforcement (Amendment XXVIII, Section 5, Exhibit A).

**COUNT II: UNITED STATES CODE SECTION 242 VIOLATIONS**

23. Plaintiff realleges all prior paragraphs.

24. Defendant's agents (e.g., Officer Wilson, Buena Park Police) willfully deprived Plaintiff and class of rights (life, liberty, property) under color of law, per 18 U.S.C. § 242.

25. Result: Plaintiff's injuries (p. 2) and class-wide harm from selective enforcement of segregating policies (LRA).

Page 4 of 14

[revised using grok.ai; remaining lines 31-56 left intentionally blank on this page]

## SPECIFIC HARMS FROM DEFENDANT'S ACTIONS

26. Segregation by Policy: LRA targets immigrants, echoing past acts (1912 Immigration Act), creating unequal subclasses against Amendment XXVIII, Section 1 (Exhibit A).

27. Rights Restrictions: Marriage laws (e.g., DOMA, pre-2015) and drug bans limit freedom of contract and enjoyment (Amendment XXVIII, Section 3), favoring moral bias over equality.

28. Enforcement Abuse: Plaintiff's false arrests (p. 11-12) mirror LRA's risk—broad laws enable profiling, violating 14th Amendment and 18 U.S.C. § 242.

29. Economic Harm: Non-human entities (banks, landlords) exploit subclasses (p. 7-8), e.g., Plaintiff's $17,000 credit hit (p. 11), unremedied by Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests:

A. Judgment against Defendant.

B. Unlimited monetary damages for Plaintiff and class.

C. Costs and fees, including reasonable attorney fees if counsel joins.

D. Immediate injunctive relief halting enforcement of LRA and all segregating policies conflicting with Amendment XXVIII (Exhibit A).

E. Adoption of Amendment XXVIII as constitutional remedy.

F. Other relief as the Court deems just.

Respectfully submitted,
/s Jerry Benjamin Soper III
Jerry Benjamin Soper III
1328 Second Street Suite B, Santa Monica, CA 90401
541.264.5772 (Google Voice)
soperiijerry@gmail.com
Dated: March 2, 2025

Page 5 of 14

[revised using grok.ai; remaining lines 33-56 left intentionally blank on this page]

**EXHIBIT A: PROPOSED AMENDMENT XXVIII**
Proposed Amendment XXVIII to the United States Constitution

Section 1. Definition of People and Equality
The term "People" shall mean all human beings physically present within the borders of the United States, irrespective of origin, birth, naturalization, or any characteristic including but not limited to race, sex, gender, religion, or economic status. All People shall be equal before the law, entitled to the same rights, privileges, and immunities without distinction or segregation into classes, types, or subtypes.

Section 2. Rights Exclusive to People
No non-human entity, including but not limited to corporations, organizations, or governmental agencies, shall be afforded the rights, privileges, or immunities secured by this Constitution to the People. The rights of People shall supersede any conflicting interests of non-human entities in all matters of law.

Section 3. Freedom of Contract
The People shall have the unrestricted right to enter into contracts, including but not limited to unions of mutual consent, without limitation on the number of parties or their characteristics, provided such contracts do not infringe upon the equal rights of others. No law shall restrict this freedom based on religious, moral, or historical precedent separate from the public good.

Section 4. Repeal and Reinterpretation
All amendments, statutes, regulations, or policies enacted prior to this Amendment that create or perpetuate unequal treatment among the People, or that grant rights to non-human entities equal to or exceeding those of the People, are hereby repealed or shall be reinterpreted to conform with this Amendment. Congress shall have power to enforce this provision by appropriate legislation.

Section 5. Enforcement
Congress and the several States shall ensure the equal application of this Amendment within their respective jurisdictions. Any law, policy, or practice found to segregate or discriminate among the People, or to limit their enjoyment of rights based on place, time, or manner, shall be null and void unless such limitation is strictly necessary to prevent imminent and substantial harm to the physical safety of the People, as demonstrated by clear and present evidence of specific risk. In the case of an epidemic, restrictions—including access to or provision of vaccines and boosters—may be imposed only if based on objective scientific evidence of a contagious disease posing an imminent threat of widespread death or severe bodily harm, and only to the extent required to contain its spread, with such measures applied uniformly to all People without distinction and subject to immediate judicial review. Vaccines and boosters may be mandated only where scientific evidence demonstrates their necessity to avert an imminent epidemic catastrophe, and no individual shall be penalized for refusal absent clear proof of direct and immediate harm to others. No restriction shall be imposed based on speculative, generalized, or moral assertions of public safety absent such evidence.

Section 6. Effective Date
This article shall take effect immediately upon ratification by three-fourths of the several States.

Page 6 of 14

```
[revised using grok.ai; remaining lines 49-56 left intentionally blank on this
page]
```

**DETAILED FACTUAL SUPPORT**

30. Historical Segregation: Defendant's laws (e.g., 1912 Immigration Act) racially profiled, limiting immigration—how this nation formed—against equality intent.

31. Gender Inequality: Pre-19th Amendment, women lacked voting rights; DOMA (1996-2013) restricted marriage contracts, fixed only partially (Respect for Marriage Act, 2022).

32. Prohibition Failures: 18th Amendment (1921-1933) and drug bans bred crime (black markets, p. 9-10), not safety, limiting rights enjoyment unequally.

33. Corporate Overreach: Banks (FICO scores), landlords (evictions), and police (seizures) exploit subclasses, unchecked by Defendant (p. 7-8).

Page 7 of 14

[revised using grok.ai; remaining lines 15-56 left intentionally blank on this page]

**CLASS ACTION BASIS**

34. Plaintiff represents millions harmed by segregating laws/enforcement (e.g., LRA, drug bans, police abuse).

35. Common questions: Do these policies violate constitutional equality? Are People treated as one class?

36. Certification aligns with Amendment XXVIII, Section 1 (Exhibit A), ending subclass harm.

Page 8 of 14

```
[revised using grok.ai; remaining lines 11-56 left intentionally blank on this page]
```

**PROHIBITION AND DRUG POLICY HARMS**

37. Bans on recreational drugs (e.g., marijuana, opioids) mirror Prohibition—black markets, violence, corruption (syndicates, turf wars)—not safety (Amendment XXVIII, Section 5).

38. Prices soar (e.g., marijuana or others 1 kg: $4k-$45k wholesale costs, $11k+ retail revenue in 0.5g units [$22k revenue retail sales for $4k wholesale sales ), punishing consumers, not protecting them.

39. Defendant's enforcement (e.g., Plaintiff's arrests) targets individuals, not root causes, violating rights.

Page 9 of 14

```
[revised using grok.ai; remaining lines 12-56 left intentionally blank on this
page]
```

Jerry Benjamin Soper III v. United States                                          United States District Court

**BLACK MARKET IMPACT**

40. Organized crime fills gaps Defendant creates—manufacturers to retailers, no different from legal supply chains, but riskier due to bans.

41. Harm: adulterated drugs, law enforcement casualties, civil rights violations (e.g., illegal searches, p. 12).

42. Legalization, per Amendment XXVIII, Section 5, would regulate, not prohibit, reducing harm.

Page 10 of 14

[revised using grok.ai; remaining lines 11-56 left intentionally blank on this page]

**NOTICE INTENT TO FILE AND COMPLAINT PROPOSED CONSTITUTIONAL AMENDMENT**
**Modified Date : March 2, 2025 11:45 AM PDT**

**SPECIFIC INCIDENTS OF HARM**

43. Restraining Order (Case 23V000721): Issued without due process, stripping Plaintiff's gun rights, tied to false claims Plaintiff currently unable to rebut—malicious prosecution under color of law (18 U.S.C. § 242). 44. Huntington Beach Arrest: Officer Wilson falsely arrested Plaintiff for trespassing (CA Penal Code § 602(m)), misidentifying him (Jerry Benjamin Soper vs. Jerry Benjamin Soper III), evicting him (from zip code 92647) legal possession (zip 92648), with stolen (by others) property and currently active bench warrant —unequal enforcement.

Page 11 of 14

[revised using grok.ai; remaining lines 12-56 left intentionally blank on this page]

Case 2:25-cv-02064-UA    Document 1    Filed 03/05/25    Page 42 of 97    Page ID #:42

45. Buena Park Arrest: Police used excessive force (fractured C2-C3 vertebrae), falsely arrested Plaintiff (CA Penal Code § 602(o)), stole his firearm—rights to life, liberty, property gone, no due process.

46. These acts show LRA's danger: broad laws invite abuse, targeting subclasses (Plaintiff as squatter/ immigrant-like).

Page 12 of 14

[revised using grok.ai; remaining lines 10-56 left intentionally blank on this page]

Jerry Benjamin Soper III v. United States                                    United States District Court

## LEGAL ARGUMENT

47. Defendant's policies violate 14th Amendment equal protection—LRA and past acts (DOMA, Prohibition) segregate, not equalize.

48. 18 U.S.C. § 242 applies: agents (police, officials) willfully deprive rights under color of law, unpunished.

49. Amendment XXVIII (Exhibit A) is the fix: one People class, no entity rights, strict public safety limits.

Page 13 of 14

[revised using grok.ai; remaining lines 11-56 left intentionally blank on this page]

**CONCLUSION**

50. Defendant's segregating laws and enforcement, epitomized by LRA, defy the Constitution's equality intent. Plaintiff's harms prove the pattern. Amendment XXVIII restores the founders' vision.

Respectfully submitted,
/s Jerry Benjamin Soper III
Jerry Benjamin Soper III
Dated: March 2, 2025

Page 14 of 14

Certificate of Word Count: 2,363

**Dated: Friday, February 28, 2025**

REVISION DATED: Friday, February 28, 2025

[revised using grok.ai; remaining lines 20-56 left intentionally blank on this page]

 Gmail

**Jerry Soper III <soperiiijerry@gmail.com>**

---

**Request received: Lifeline Benefits**
4 messages

---

**FCC** <consumercomplaints@fcc.gov>                                    Mon, Feb 24 at 13:44
Reply-To: FCC <consumercomplaints@fcc.gov>
To: Soperiiijerry <soperiiijerry@gmail.com>

    Thank you for contacting the FCC's Consumer Inquiries and Complaints Center.

    We have received your submission and have assigned it Ticket No. 7674634. Periodic emails you receive
throughout the complaint process updating you about the status of your complaint may reference this ticket
number.

    Your submission benefits the FCC by providing us with important information we can use to develop policies
to protect consumers, enforce against violations of the Communications Act, and encourage future
compliance with the law.

    If you have information to add to your complaint, please respond directly to this email.

    You can view a list of frequently asked questions about the informal complaint process at:
    https://www.fcc.gov/consumercomplaints/FAQs

    Thank you for your help in furthering the FCC's mission on behalf of consumers

---

    [K42WWV-Y9675]

---

**Jerry Soper III** <soperiiijerry@gmail.com>                                    Mon, Feb 24 at 13:57
To: FCC <consumercomplaints@fcc.gov>

    Per the text on MVNO website,

AirTalk Wireless distinguishes itself in the telecommunications landscape by
offering robust services through the federal Lifeline program. Customers who
qualify can take advantage of free phone service that encompasses a remarkable
array of features designed to keep them connected without worry. Subscribers are
not only afforded Unlimited Talk and Text, Wi-Fi calling, a crucial benefit for
constant communication, but they also receive a generous data allotment,
enabling them to enjoy high speed of Internet to browse the internet, use apps,
and stay updated on the go.

A particular highlight of AirTalk's offerings is their Unlimited International calling to 80 countries. This feature is exceptionally beneficial for those with family and friends abroad, allowing them to maintain strong ties without the burden of excessive call charges. Moreover, many plans through AirTalk include access to emergency services, ensuring that individuals can reach help whenever needed. It's important to note that while free phones are offered, the types of devices made available can vary by state, ensuring that offerings are tailored to the specific needs of each community.

Through Lifeline, AirTalk Wireless customizes its approach to each customer, not only providing the basic communicative necessities but also enriching its service with features that broaden the scope of connectivity, ranging from international communication capabilities to essential data services that cater to an ever-increasing digital world.

A generous amount of data is not: 12GB or 40GB.

Net neutrality and ability to pay should not hinder access to information by limiting speeds or amount of data consumed or what content may be accessed by humans by censorship or limiting how quickly one may access information by speed throttling, data caps or otherwise interfering with consumer consumption of data to increase amount a company receives by their own determining of how much is enough or how quickly it may be accessed by downloading or uploading transmission or connection speeds when capacity is equally divided by all devices accessing network within a particular location should the device also be capable per verification through data transmitted along with the subscriber identification module and device international mobile equipment identity number matching the device capability for capacity at or exceeding network capacity currently or in future network hardware upgrades.

Why are networks allowed to make determinations outside of FCC approvals?  Furthermore, why is FCC definitions way behind technology public releases when approval for device capacity provided prior to production and marketing and consumer availability with time to market already provided by manufacturers of consumer devices?

Jerry Soper III
soperiiijerry@gmail.com

CONFIDENTIALITY NOTICE: Please note that the correspondence and the information contained in this message may be confidential and protected from disclosure (W&I Code Section 5328 and MH 5671 HIPAA Privacy Rule CFR Section 164.508) and/or legally privileged information. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any unauthorized interception, review, use of disclosure, dissemination, distribution or copying of this communication is strictly prohibited and may violate applicable laws. If you are not the intended recipient, please contact the sender at (213) 421-1958, and destroy all copies of the communication. In the event the protected confidential message option is forgotten due to human error, this notice still applies as the content is strictly for the eyes of the addressee or to whom the email body is addressed should the email address be entered incorrectly.
[Quoted text hidden]

---

**Jerry Soper III** <soperiiijerry@gmail.com>                                    Mon, Feb 24 at 14:17
To: FCC <consumercomplaints@fcc.gov>

Standards created by the Federal Communications Commission 39 years ago in 1985, and vision of congress lacking knowledge of where technology was headed would bring in line FCC implementation and align with current technological capabilities and implementations and fall under the scope of its authority as intended when created.

Time to adjust to current day as technology changes very rapidly very quickly and time is of the essence as the last updates were already outdated when implemented based on pending consumer technologies and their capacities or ideal maximum performance capabilities already in production and or released to consumers.   Updates should not include numbers unless at actual network performance speeds.  To avoid continual revisions specific language should only include wording such as performance at network capacities or capabilities forcing the protection of consumers when companies avoid legal liabilities by doing the absolute least possible because that is how it was written without foresight to automatically increase without coming back together and coming to a new agreement wasting everyone's time in the process when doing the right thing was simple.   Companies try to avoid legal liability by saying things beyond their control aren't their responsibility, however, automatic matching of capacity and capability of a device with the network speed allocated to the subscriber at the point of connection is automatically provided with the exchange and authentication to the network when assigning ipv4 and ipv6 addresses to a consumers device and is included in the secure authentication handshake allowing the device to access the network in the first place upon successful verification of the subscriber identity module and server response the customer is indeed active.   All without human interaction as occurred back when humans connected to each other for voice communication through a wired party line and spoke with a switchboard operator (I was born much after the conversion from manual processes of a party line to to an adoption of individual lines using rotary phones that automated the dialing and switching of connections to route the call to the number the customer dialed with a rotary dial or late touch tone).  The old way of thinking and billing of tolls by operators and companies is still their current mindset for overcharging consumers for things from the beginning when their costs are very minimal per unit consumed; that being fractions of pennies per unit of voice, text or data consumed by the end user.

[Quoted text hidden]

---

**Jerry Soper III** <soperiiijerry@gmail.com>                                    Mon, Feb 24 at 20:16
To: FCC <consumercomplaints@fcc.gov>



Just usage by phone system services without including required security update that was needed and required a WiFi connection.

[Quoted text hidden]

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

Plaintiff, JERRY BENJAMIN SOPER III, PRO SE IN PROPRIA PERSONA FORMA PAUPERIS
v.

Defendant(s), United States of America also known as United States

**MOTION FOR PRELIMINARY INJUNCTION**

**NOTICE OF MOTION**
TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:
Plaintiff, Jerry Benjamin Soper III, hereby moves this Court for a preliminary injunction enjoining Defendant from enforcing the Laken Riley Act and all segregating laws or policies conflicting with the equal rights of the People, as detailed in the Complaint filed March 2, 2025. This motion is based on the attached memorandum, the Complaint, Exhibit A (Amendment XXVIII), and all pleadings and evidence on file. Plaintiff requests an emergency hearing by March 10, 2025, given imminent harm.

Dated: March 2, 2025
/s Jerry Benjamin Soper III
Jerry Benjamin Soper III
1328 Second Street Suite B, Santa Monica, CA 90401
541.264.5772 (Google Voice)
soperiijerry@gmail.com

Page 1 of 5

[remaining lines 30-56 left intentionally blank on this page]

**NOTICE AND MOTION FOR PRELIMINARY INJUNCTION**
Modified Date : March 2, 2025 11:04 AM

## MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

### I. INTRODUCTION

Plaintiff seeks immediate injunctive relief to halt Defendant's enforcement of the Laken Riley Act (LRA) and all laws or policies that segregate the People within U.S. borders into unequal subclasses, violating the Constitution's equality intent. Plaintiff's ongoing harms—false arrests, property loss, and rights deprivation (Complaint, p. 2)—show the irreparable injury caused by such policies, including LRA. This Court should enjoin enforcement pending resolution, adopting Proposed Amendment XXVIII (Exhibit A) as the constitutional benchmark.

### II. LEGAL STANDARD

A preliminary injunction requires: (1) likelihood of success on the merits; (2) irreparable harm absent relief; (3) balance of equities favoring plaintiff; and (4) public interest served (Winter v. NRDC, 555 U.S. 7, 20 (2008)). Plaintiff meets all prongs.

### III. ARGUMENT

    A. Likelihood of Success on the Merits

       1. LRA Violates Equal Protection: LRA targets immigrants for detention based on broad crime categories (Complaint, p. 3), creating a subclass without uniform application to all People, contravening the 14th Amendment. Plaintiff's false arrests (Complaint, p. 11-12) mirror this pattern—unequal enforcement lacking due process.

       2. Section 242 Violations: Defendant's agents (e.g., Officer Wilson) willfully deprived Plaintiff of rights under color of law (18 U.S.C. § 242), unremedied by Defendant (Complaint, p. 4, 11-12).

       3. Constitutional Intent: The founders aimed for equality (Complaint, p. 7); LRA and similar laws (e.g., drug bans, DOMA remnants) defy this, as does corporate overreach (Complaint, p. 7-8). Amendment XXVIII (Exhibit A, Section 1) restores this intent—one People, no segregation. Plaintiff's claims align with this fix, likely prevailing.

Page 2 of 5

[remaining lines 36-56 left intentionally blank on this page]

Jerry Benjamin Soper III v. United States                                United States District Court

### B. Irreparable Harm Absent Relief

4. Plaintiff's harms—false arrests, excessive force (fractured vertebrae), stolen firearm, and credit damage (Complaint, p. 2, 11-12)—are ongoing and irreparable. LRA's enforcement risks more: profiling and detention without equal treatment threaten Plaintiff and the class (Complaint, p. 8).

5. Constitutional violations (e.g., 2nd, 14th Amendments) are per se irreparable (Elrod v. Burns, 427 U.S. 347, 373 (1976)). Plaintiff's loss of liberty and property, amplified by LRA-style policies, demands immediate halt—money damages can't undo this.

### C. Balance of Equities Favors Plaintiff

6. Plaintiff and millions (class, Complaint, p. 8) suffer daily from segregating enforcement—arrests, evictions, rights curbs (Complaint, p. 9-12). Defendant faces no harm pausing LRA; it can detain under existing laws if evidence warrants (Amendment XXVIII, Section 5 strict limits, Exhibit A). Equity tips sharply to Plaintiff.

### D. Public Interest Served

7. Enjoining LRA and segregating policies upholds equality—the Constitution's core (Complaint, p. 7)—serving all People. Defendant's interest in unequal enforcement (e.g., black markets, police abuse, Complaint, p. 9-10) harms, not helps, the public. Amendment XXVIII (Exhibit A) aligns with this interest: uniform rights, no subclasses.

Page 3 of 5

[remaining lines 25-56 left intentionally blank on this page]

**NOTICE AND MOTION FOR PRELIMINARY INJUNCTION**

Modified Date : March 2, 2025 11:04 AM

**IV. SCOPE OF RELIEF REQUESTED**

       8. Plaintiff requests this Court:

            a. Enjoin Defendant from enforcing the Laken Riley Act in its entirety.

            b. Enjoin all laws, policies, or practices segregating People into subclasses (e.g., drug bans, immigration profiling) conflicting with Amendment XXVIII (Exhibit A, Sections 1, 5).

            c. Order Defendant to cease selective enforcement pending suit, per strict public safety limits (Exhibit A, Section 5—vaccines/boosters only if scientifically imminent).

       9. This relief prevents further harm (e.g., Plaintiff's arrests, Complaint, p. 11-12) while preserving Defendant's ability to act on proven, immediate threats.

**V. URGENCY AND HEARING REQUEST**

       10. Harm is imminent—LRA enforcement began post-enactment; Plaintiff's bench warrant and class injuries persist (Complaint, p. 11). Filing today, March 2, 2025, meets Plaintiff's deadline (Complaint, p. 1). Plaintiff requests an emergency hearing by March 10, 2025, to halt irreparable damage.

Page 4 of 5

[remaining lines 19-56 left intentionally blank on this page]

## VI. CONCLUSION

Plaintiff's likelihood of success, irreparable harm, equities, and public interest demand immediate relief. This Court should enjoin Defendant's segregating policies, starting with LRA, to restore constitutional equality per Amendment XXVIII (Exhibit A).

Respectfully submitted,
/s Jerry Benjamin Soper III
Jerry Benjamin Soper III
1328 Second Street Suite B, Santa Monica, CA 90401
541.264.5772 (Google Voice)
soperiijerry@gmail.com
Dated: March 2, 2025

Page 5 of 5
Certificate of Word Count 943 words
[remaining lines 17-56 left intentionally blank on this page]

 Gmail

**Jerry Soper III <soperiiijerry@gmail.com>**

## Request received: Poor speed | limited capacity | violation of FCC high speed definition

2 messages

**FCC** <consumercomplaints@fcc.gov>                                     Sat, Feb 22 at 12:56
Reply-To: FCC <consumercomplaints@fcc.gov>
To: Soperiiijerry <soperiiijerry@gmail.com>

Thank you for contacting the FCC's Consumer Inquiries and Complaints Center.

We have received your submission and have assigned it Ticket No. 7671565. Periodic emails you receive throughout the complaint process updating you about the status of your complaint may reference this ticket number.

Your submission benefits the FCC by providing us with important information we can use to develop policies to protect consumers, enforce against violations of the Communications Act, and encourage future compliance with the law.

If you have information to add to your complaint, please respond directly to this email.

You can view a list of frequently asked questions about the informal complaint process at:
https://www.fcc.gov/consumercomplaints/FAQs

Thank you for your help in furthering the FCC's mission on behalf of consumers

[Y306MW-WRZ0K]

**Jerry Soper III** <soperiiijerry@gmail.com>                          Sat, Feb 22 at 12:58
To: FCC <consumercomplaints@fcc.gov>

See attached.

Jerry Soper III
soperiiijerry@gmail.com

CONFIDENTIALITY NOTICE: Please note that the correspondence and the information contained in this message may be confidential and protected from disclosure (W&I Code Section 5328 and MH 5671 HIPAA Privacy Rule CFR Section 164.508) and/or legally privileged information. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any unauthorized interception, review, use of disclosure, dissemination, distribution or copying of this communication is strictly prohibited and may violate applicable laws. If you are not the intended recipient, please contact the sender at (213) 421-1958, and destroy all copies of the communication. In the event the protected confidential message option is forgotten due to human error, this notice still applies as the content is strictly for the eyes of the addressee or to whom the email body is addressed should the email address be entered incorrectly.
[Quoted text hidden]

IMG_7098.png, IMG_7101.png, IMG_7104.png, IMG_7100.png, IMG_7097.png, IMG_7102.png, IMG_7103.png

 **Jerry Soper III <superiiijerry@gmail.com>**

---

**Enrollment Shipment Tracking Details**

---

**AirTalk Wireless** <no-reply@airtalkwireless.com>                                    Wed, Jan 22 at 06:30
To: <SOPERIIIJERRY@gmail.com>

---

                 A Leading FCC Licensed Lifeline Service Provider

---

# Customer Order Tracking

Dear **JERRY SOPER**,

We are excited to inform you that your order has shipped!

Your phone number is

Once you receive your phone, remember to activate it right away by dialing 611 on your phone. This call will activate your phone.

 Tracking Number

* Please allow 24-48 hours for the information to show in the shipping provider's system. If your shipment is sent during a holiday, please add an extra 1-2 days..

Your Account Information:

Enrollment ID is:

Password is

Login Now

Thank you for applying with AirTalk Wireless and we look forward to having you as a customer!

**Important Information**

**How can I check my application status?**
To check the status of your application, simply visit our online Check Status page and enter the same email address and zip code you used while initially applying. Once you are logged in you will see a variety of information, including the status of your application and if any additional documentation is required.

**Where is my tracking number?**
Once your application is approved, please give us 7-10 business days for your order to be processed. Once it's been processed, you'll be sent an email and a SMS with your tracking number. Make sure to check your inbox and spam folder.

**How to Update my mailing address:**
Log into your account, go to Overview/Personal Information, click on the Edit button by the Mailing Address

**NOTE:** This only concerns your mailing address and won't affect your benefits service address. Once your order tracking is created, later address changes won't update the tracking mailing address. If this happens, contact the shipping carrier to redirect the package or arrange pickup at your local post office.

Hold at Location | FedEx

1.800.Go.FedEx

1.800.463.3339



Contact us

Call us: +1 (206) 445-7825

or call +1 (855) 924-7825

**Get the AirTalk Wireless App**





Follow us on

   

Terms & Conditions | Privacy Policy | FAQ's

@2024.All rights reserved.

Not interested in email updates? You can unsubscribe from this list.





AirTalk Wireless® is a program provided by HTH Communications serving eligible American households. To participate in the AirTalk Wireless® service, certain eligibility requirements must be met, which are set by each State where the service is provided. These requirements are based on a person's participation in state, Federal support programs, or by meeting the Income Poverty Guidelines as defined by the U.S. Government. The service is limited to one person per household. AirTalk Wireless is powered by AirVoice; an FCC-licensed Eligible Telecommunication Carrier (ETC) which offers Lifeline, Affordable Connectivity and Emergency Broadband Service to eligible customers across America. Our mission is to provide the best customer service on the largest, nationwide 5G/4G network, a simple application process and top iconic quality phone brands consumers want such as iPhones, Galaxies, Google Pixels, Motorolas and more.









22:35

## 17. Limitation of Liability

AirTalk Wireless will not be liable to you (subscriber) for any direct or indirect, special, incidental, consequential, exemplary or punitive damages of any kind, including lost or potential profits (regardless of whether it has been notified such loss may occur) by reason of any act or omission in its provision of equipment and/or Services. AirTalk Wireless will not be liable for any act or omission of any other company furnishing a part of our services, or our equipment or for any damages that result from any service or equipment provided by or manufactured by affiliated or non-affiliated third parties. AirTalk Wireless is not responsible, at any time, and shall not be liable to you or anyone else for any personal information such as user names, passwords, contacts, pictures, SMS, or any additional content you may have stored on your phone or which may remain on your phone during and/or after you no longer have service with AirTalk Wireless. Unless prohibited by law, you (subscriber) agree to limit claims for damages or other monetary relief against each other to direct and actual damages. AirTalk Wireless assumes no risk or responsibility for a subscriber's use of any content provided by AirTalk Wireless services. There is no fiduciary duty that exists between you (subscriber) and AirTalk Wireless or its affiliates. You (subscriber), also agree that AirTalk Wireless will not be liable for any missed voice mails, any messages from your voicemail system, any data content, or any storage or deletion of contacts from a handset address book provided by AirTalk Wireless.

## 18. Use of AirTalk Wireless Customer Information

🔒 airtalkwireless.com

22:31



Log In    **Apply Now**

**Disclosure:**

For all free phones subsidized by AirTalk Wireless (the Company), we make every effort to fulfill your order and ship the device make and model you selected during the application process. Occasionally, a device may become unavailable after you have submitted your order. In that case, the Company reserves the right to select an alternate phone (a different make and model than the one you selected) of equal or greater value as determined by the Company.



22:30

5G

Log In    Apply Now

**Premium SMS:** Premium SMS is a text message to a designated "short code." Buying or attempting to buy SMS services from anyone other than AirTalk Wireless is strictly prohibited. Premium SMS campaigns may include activities such as sending a vote, playing a game, expressing opinions, subscribing to some type of service, or some type of interaction with a television program. AirTalk Wireless does not participate in Premium SMS services or campaigns. You are solely responsible for any charges incurred for Premium SMS services or campaigns. Any text messages sent to a "short code" using AirTalk Wireless service will not likely be successfully sent or received. Any charges you may incur as a result of any attempts to participate in Premium SMS campaigns or services are not refundable, regardless of whether you incur charges as deductions from your AirTalk Wireless minutes.

## 11. Preventing or Sending Spam:

AirTalk Wireless subscribers receiving unwanted text messages ('spam') should contact the source and request to unsubscribe or remove the subscriber's wireless phone number from the service. If an AirTalk Wireless subscriber intentionally sends spam from an AirTalk Wireless handset, the subscriber may be terminated without notice. Contact AirTalk Wireless Customer Service at toll free +1 (206) 445-7825 Or +1 (855) 924-7825 if additional help or information is required.

AirTalk Wireless may send messages to your AirTalk Wireless handset or alternative phone number via SMS.

## 12. AirTalk Wireless Directory Assistance, Additional Charges and Services

airtalkwireless.com



Log In    **Apply Now**

## 10. AirTalk Wireless Text Messaging Rates

An AirTalk Wireless subscriber can send and receive text messages of up to 160 characters. This text message includes the address and subject line. The type of messages a device can receive will depend on the wireless handset capabilities. Standard plan message rates apply when sending or receiving text messages, regardless of if the message is viewed. Any unused messages that expire from one monthly billing cycle cycle will not carry over to the next monthly billing cycle unless the monthly plan specifically allows carry over messages. Text messages sent to you by AirTalk Wireless are free of charge.

**Domestic Text Messaging Rates:** Any unused messages will expire at the end of your monthly subscription period and will not be applied to subsequently purchased minutes unless your plan includes roll over minutes. Subscriber messaging plans do not include international text messages.

**International Text Messaging Rates:** AirTalk Wireless does not allow international text messages. Attempting to send international messages could result in deactivation of service and de-enrollment from AirTalk Wireless Lifeline Assistance Program.

**Premium SMS:** Premium SMS is a text message to a designated "short code." Buying or attempting to buy SMS services from anyone other than AirTalk Wireless is strictly prohibited. Premium SMS campaigns may include activities such as sending a vote, playing a game, expressing opinions, subscribing to some type of service, or some type of interaction with a television

🔒 airtalkwireless.com



22:30    5G

Log In    Apply Now

**Unlimited Data Plan Usage Terms:** Our Unlimited Data plan includes 40GB of 5G/4G LTE data each month. After reaching this limit, your data speeds may be reduced for the remainder of the billing period. Certain data-concentrated activities including but not limited to gaming, downloading/uploading, and video streaming, may be limited after data is reduced on our Unlimited plan. To maintain optimal speeds, consider purchasing a High-Speed Data Top-Up.

**Factors Affecting Data Speeds:** Data speeds can be influenced by factors such as weather, geography, buildings, and network congestion. Being in remote areas, inside certain structures, or using data during peak hours may result in slower speeds. These factors are beyond our control, but moving to a more open location may help.

## 9. AirTalk Wireless Taxes and Surcharges

AirTalk Wireless charges state and local sales taxes. Pricing listed on the AirTalk Wireless website or listed in advertising methods for wireless service may not include certain taxes or surcharges. Subscribers are responsible for all charges applicable to the use of AirTalk Wireless service regardless of if the subscriber was the actual user of the service. The amount of these taxes and surcharges are subject to change and may vary by geographic area. AirTalk Wireless may charge and collect sales taxes and regulatory fees on all Additional Minutes or Data Offering Plans in each state. Third party authorized retailers who sell AirTalk Wireless Additional Minutes or Data Offering Plans may become responsible for the collecting and paying of sales taxes and required regulatory fees for transactions that occur through such third party authorized retailers. Changes to a tax or

airtalkwireless.com

22:29

5G

 Log In  Apply Now 

the Data Content without notice or place
restrictions/limits on the use of storage areas. Data
Content stored on a Device, transmitted over our
networks, or stored by AirTalk Wireless may be deleted
modified, or damaged. You may not be able to make or
receive voice calls while using data Services. Data
Content provided by our vendors or third parties is
subject to cancellation or termination at any time
without notice to you and you may not receive a refund
for any unused portion of the Data Content.

Specific Terms & Restrictions On Using Data Services: In
addition to the rules for using all of our other Services,
unless we identify the Service or Device that you have
selected as specifically intended for that purpose (for
example, wireless routers, Data Link, etc.), you may not
use our data Services: (1) with server devices or host
computer applications, or other systems that drive
continuous, heavy traffic or data sessions; (2) as a
substitute or backup for private lines or frame relay
connections; or (3) for any other unintended use as we
determine in our sole discretion. We reserve the right to
limit, suspend, or constrain any heavy, continuous data
usage that adversely impacts our networks'
performance or hinders access to our networks. If your
Services include Web or data access, you also can't use
your Device as a modem for computers or other
equipment, unless we identify the Service or Device you
have selected as specifically intended for that purpose
(for example, with "phone as modem" plans, broadband
internet access service, mobile broadband card plans,
wireless router plans, etc.).

**Porting/Transferring a Phone Number:** We do not
guarantee that number transfers to or from us will be
successful. If you authorize another carrier to transfer a

🔒 airtalkwireless.com



22:29

5G

Log In    Apply Now

**About Data Services & Content:** Our data Services and your Device may allow you to access the Internet, text, pictures, video, games, graphics, music, email, applications, sound and other materials ("Data Content") or send Data Content elsewhere. Some Data Content is available from our vendors, or us while other Data Content can be accessed from others (for example, third party websites, games, ringers, applications, etc.). We make absolutely no guarantees about the Data Content that you access on your Device. Data Content may be: (1) unsuitable for children/minors; (2) unreliable or inaccurate; or (3) offensive, indecent, or objectionable. You are solely responsible for evaluating the Data Content accessed by you or anyone through your Services. We strongly recommend that you monitor your data usage by children/minors. Data Content from third parties may also harm your Device or its software. We are not responsible for any Data Content. We are not responsible for any damage caused by any Data Content that you access through your Services, that you load on your Device, or that you request that our representatives' access or load on your Device. To protect our networks and Services or for other reasons, we may place restrictions on accessing certain Data Content (such as certain websites, applications, etc.); impose separate charges; limit throughput or the amount of data that you can transfer; or otherwise limit or terminate Services. If we provide you storage for Data Content that you have purchased, then we may delete the Data Content without notice or place restrictions/limits on the use of storage areas. Data Content stored on a Device, transmitted over our networks, or stored by AirTalk Wireless may be deleted modified, or damaged. You may not be able to make or receive voice calls while using data Services. Data

airtalkwireless.com

22:29

5G



Log In   Apply Now

**AirTalk Wireless Additional Minutes & Data Plans:**

AirTalk Wireless may offer Additional Minutes and Data Plans for purchase. Please visit https://airtalkwireless.com for the current rates of adding additional minutes and data rate plans. If you use all your monthly data before a new monthly cycle starts and you add an Additional Data Offering Plan to your account, you will be charged based off the Data Offering Plan you choose for data. Subscribers may add an Additional Data Offering Plan or service to their AirTalk Wireless account online or over the phone to your account by paying by credit/debit card. AirTalk Wireless Additional Data Offering Plans come in various increments. Sales taxes may apply and maybe added to the minute plan purchased. All data plans offered by AirTalk Wireless include a limit (CAP) on the amount of data a subscriber can use. Purchased Data Plans cannot be transferred or applied to any other wireless service or account.

AirTalk Wireless Calling Features include Caller ID, Call Waiting, Three-Way Calling, Call Forwarding, and Voicemail. Caller ID may display both your billing name and your wireless number when placing outbound calls. AirTalk Wireless does not have the ability to block your name and number when making outbound calls.

Subscribers who successfully submit an AirTalk Wireless application for the Lifeline program will receive a free SIM card and if subscribers meet certain eligibility requirements they may receive a free wireless phone provided by AirTalk Wireless. AirTalk Wireless reserves the right to determine, at its sole discretion, whether or not an applicant meets the eligibility requirements to participate or continue to participate in the AirTalk

🔒 **airtalkwireless.com**

22:29

5G



Log In    Apply Now

ETC service area. Visit https://airtalkwireless.com to check whether you reside in an AirTalk Wireless ETC service area. To be eligible for AirTalk Wireless service, a subscriber must meet the applicable eligibility standards described throughout these Terms and Conditions of Service, which may be amended by AirTalk Wireless. Where applicable, AirTalk Wireless Lifeline plans are provided to you by AirTalk Wireless and are governed by tariffs. Tariffs are on file with the appropriate public utility commissions in each state when required and supersede any term related to the Lifeline Assistance program. AirTalk Wireless may provide access to tariffs through its website. Please be aware that tariffs posted online may not be official documents and you assume full responsibility for any tariff information you access on the AirTalk Wireless website. AirTalk Wireless bears no liability for the accuracy of any documents available on this website.

## 8. AirTalk Wireless Service Rates (Airtime), Features, Coverage, and Activation Fees

Airtime charges apply to standard voice usage calls for both local, domestic long-distance calls, and international services that are subject to additional Terms and Conditions. AirTalk Wireless voice usage is deducted in full-minute increments and all partial minutes are rounded up to the next minute. Airtime usage is rounded up to the nearest whole minute. Airtime applies to all message retrieval and voice calls. Unanswered outbound calls will be billed if the ring time exceeds 30 seconds. Ring time is defined as the amount of time between the point when a call is initiated (pressing the TALK button) and when it is answered (or terminated before being answered). Credits will not be given for dropped calls. Any unused airtime that expires

🔒 airtalkwireless.com

22:28

5G



Log In    Apply Now

By applying or activating or using service with AirTalk
Wireless, a subscriber agrees not to use AirTalk Wireless
services in any way that is illegal, abusive, or fraudulent.
This will be determined by AirTalk Wireless in its sole
discretion. You may also not alter any of the software or
hardware on your AirTalk Wireless handset for any
purpose. AirTalk Wireless phones may not be sold to
third parties.

In order to verify if you reside within a service area,
please visit https://airtalkwireless.com. You may enter
your ZIP code or locate coverage maps on the website to
verify coverage. The map is only an approximation of
actual coverage and may differ substantially from the
areas of coverage shown on the website. Coverage can
be affected by many factors such as weather, terrain,
buildings, equipment, signal strength or many other
factors that may affect network coverage. AirTalk
Wireless does not guarantee coverage or network
availability.

## 7. AirTalk Wireless ETC Services

AirTalk Wireless Lifeline plans are only available for
activation by customers who reside in the areas in which
AirTalk Wireless has been designated as an Eligible
Telecommunications Carrier (ETC) and services
provided in these Terms and Conditions. To receive
subsidized wireless service, a subscriber's principal
residence address must be within an AirTalk Wireless
ETC service area. Visit https://airtalkwireless.com to
check whether you reside in an AirTalk Wireless ETC
service area. To be eligible for AirTalk Wireless service, a
subscriber must meet the applicable eligibility
standards described throughout these Terms and
Conditions of Service, which may be amended by AirTalk

🔒 airtalkwireless.com



22:28

5G

Log In     Apply Now

connections that do not consist of uninterrupted live dialogue between two individuals. An AirTalk Wireless subscriber account may be terminated, without notice, if a subscriber's usage is determined to be used in violation of the Terms and Conditions of Service for non-personal use, pager service, voicemail retrieval service, or other uses deemed inappropriate.

AirTalk Wireless services use radio transmissions and are therefore affected by limitations. Coverage is not available everywhere. Quality of service may be affected by conditions beyond AirTalk Wireless control, including atmospheric, geographical, or topographical conditions. Service may also be affected by damage to wireless handsets. AirTalk Wireless does not guarantee, or warrant, that service will be available at any specific time or geographical location, or that service will be provided without possible interruption. You should therefore never solely rely on your wireless phone for emergency calls, such as to 911. AirTalk Wireless customers have access to dial 911 in an emergency. However, occasionally a subscriber may attempt to call 911 in an area where there is no wireless coverage. If there is no wireless coverage, a subscriber's call to 911 may not go through and the subscriber should dial 911 from the nearest landline phone.

By applying or activating or using service with AirTalk Wireless, a subscriber agrees not to use AirTalk Wireless services in any way that is illegal, abusive, or fraudulent. This will be determined by AirTalk Wireless in its sole discretion. You may also not alter any of the software or hardware on your AirTalk Wireless handset for any purpose. AirTalk Wireless phones may not be sold to third parties.

airtalkwireless.com



22:28

5G

Log In   Apply Now

AirTalk Wireless provides mobile telecommunications services using the geographic areas covered by two of the largest 5G+ networks in America. International calling is subject to additional Terms and Conditions. AirTalk Wireless may provide Lifeline supported services in these areas based on state or entity authorized licensing areas. AirTalk Wireless does not guarantee coverage availability in all areas. Local phone numbers may not be available in all areas. Subscribers do not have the ability to use AirTalk Wireless service with any other wireless phone, device, or on another network. Subscribers may not use an AirTalk Wireless handset with any other service or network. Airtime may be used for domestic calling from the United States and for other services as provided in these Terms and Conditions of Service. AirTalk Wireless service is for personal use only and may not be used in a manner that interferes with another AirTalk Wireless customer's use of service. AirTalk Wireless has determined that ability to provide good service to subscribers may be impaired when customers place abnormally high number of calls, sends, or receive unusually high number of messages, or repeatedly place calls of unusually long duration, relative to typical usage by other AirTalk Wireless customers on similar service plans. Such non-typical usage suggests that a wireless phone is being used for other than personal use and is in violation of these Terms and Conditions of Service. AirTalk Wireless services are provided solely for live dialogue between two individuals. AirTalk Wireless services may not be used for any type of monitoring services, any data transmissions, or other non-personal related connections that do not consist of uninterrupted live dialogue between two individuals. An AirTalk Wireless subscriber account may be terminated, without notice, if

🔒 airtalkwireless.com



**22:28**  ⬆  ᵢᵢᵢᵢ 5G 🔋24

Log in    **Apply Now**  🔴  ☰

## 6. AirTalk Wireless Services

AirTalk Wireless service is provided at the company's discretion. AirTalk Wireless may change pricing or the company's Terms and Conditions of Service, from time to time, without notice. Unless expressly prohibited by law, AirTalk Wireless reserves the right to modify or cancel a subscriber's service, an account, or take corrective action at any time and for any reason, including, but not limited to, violation of any provision of these Terms and Conditions of Service. Check the AirTalk Wireless website, https://airtalkwireless.com, for the most recent pricing and changes to the Terms and Conditions of Service. A subscriber's right to use AirTalk Wireless service is subject to AirTalk Wireless business practices, policies, procedures, rates and Terms and Conditions of Service. AirTalk Wireless may change the Terms and Conditions of Service at any time. AirTalk Wireless will notify subscribers of change to the Terms and Conditions of Service that are determined to be materially adverse to a subscriber's service 30 days in advance of the change. If subscriber does not terminate service within 30 days of receiving this notice of a change in the Terms and Conditions of Service, subscriber agrees to accept any such changes.

AirTalk Wireless provides mobile telecommunications services using the geographic areas covered by two of the largest 5G+ networks in America. International calling is subject to additional Terms and Conditions. AirTalk Wireless may provide Lifeline supported services in these areas based on state or entity authorized licensing areas. AirTalk Wireless does not guarantee coverage availability in all areas. Local phone numbers may not be available in all areas. Subscribers do not

🔒 airtalkwireless.com

© 2025 AirTalk | HTH Communications

Privacy Policy | Terms & Conditions | Law Enforcement |
Open Internet Statement | Hearing Aid Compatible Devices |
Network Management Policy

AirTalk Wireless is an Eligible Telecommunications Carrier (ETC) and
offers Lifeline supported services through a federal benefit program
which is non-transferable. Only eligible customers may enroll in
Lifeline. Lifeline service is limited to one per household.
Documentation providing identity and eligibility is necessary for
enrollment. To view terms & conditions, visit
https://airtalkwireless.com/terms-conditions. AirTalk Wireless
service is not available in all states/areas and may vary by state.
Coverage is not available everywhere. Customers who willfully
make false statements in order to obtain the Lifeline benefit can be
punished by fine, imprisonment, or can be barred from the program.

🔒 airtalkwireless.com



Can I put my AirTalk Wireless SIM card in another phone?

You can transfer the AirTalk SIM card to another device, as long as the phone is compatible with AirTalk Wireless. Feb 6, 2025

https://airtalkwireless.com

What Phones Are Compatible With AirTalk Wireless?

**What phone towers does AirTalk Wireless use?**

We use T-Mobile and AT&T towers. Thank you for your interest in AirTalk Wireless! We hope you will consider switching your Lifeline and ACP benefits to us where our customers not only receive FREE monthly service but also a FREE smartphone. To sign-up online please visit us at https: //airtalkwireless.com/apply. Jan 4, 2024

https://www.facebook.com

AirTalk Wireless – Facebook



**20:28**

**Plan**

Renew Plan Now

<u>What happens if you don't renew your plan on time?</u>

**Special Offer:** AirTalk Wireless offers you exceptional plans at unbeatable prices. Elevate your experience with the exclusive Lifeline plan below

**Lifeline Premium Plan [CA]**

**25GB**
High Speed 5G+ Internet

Billing Cycle Price
**$29.25** ⓘ

Regular Month Price
$20.00/mo
with Lifeline Discount

Change

**Lifeline Unlimited Plan [CA]** ✓

**Unlimited**
High Speed 5G+ Internet

Billing Cycle Price
**$30.00**

Regular Month Price
$30.00/mo
with Lifeline Discount

Current Plan

*Monthly charges are non-refundable.
For Lifeline Unlimited Plans: Customers exceeding certain data parameters will experience slower speeds. See <u>terms and conditions</u>

**All Plans Include:**

✓ **Unlimited Talk**

✓ **Unlimited Text**

✓ Free International Calling to 200+ Countries











**15:05**                                    5G  8

**Today**
15:04

**My Number**

**AirTalk plan**                    **Lifeline Unlimited Plan [CA]**

**Minutes available for use**                        **Unlimited**

**Texts available to use**                           **Unlimited**

**Phone Model**                                      **iPhone 8**

**Lifeline Number**

**Note:** Your Data, Text, and Talk usage may take 2-5 days or longer to display accurately in AirTalk's system.





**Unlimited Data Plan Usage Terms:** Our Unlimited Data plan includes 40GB of 5G/4G LTE data each month. After reaching this limit, your data speeds may be reduced for the remainder of the billing period. Certain data-concentrated activities including but not limited to gaming, downloading/uploading, and video streaming, may be limited after data is reduced on our Unlimited plan. To maintain optimal speeds, consider purchasing a High-Speed Data Top-Up.

**Factors Affecting Data Speeds:** Data speeds can be influenced by factors such as weather, geography, buildings, and network congestion. Being in remote areas, inside certain structures, or using data during peak hours may result in slower speeds. These factors are beyond our control, but moving to a more open location may help.

## 9. AirTalk Wireless Taxes and Surcharges

AirTalk Wireless charges state and local sales taxes. Pricing listed on the AirTalk Wireless website or listed in advertising methods for wireless service may not include certain taxes or surcharges. Subscribers are responsible for all charges applicable to the use of AirTalk Wireless service regardless of if the subscriber was the actual user of the service. The amount of these taxes and surcharges are subject to change and may vary by geographic area. AirTalk Wireless may charge and collect sales taxes and regulatory fees on all Additional Minutes or Data Offering Plans in each state. Third party authorized retailers who sell AirTalk Wireless Additional Minutes or Data Offering Plans may become responsible for the collecting and paying of sales taxes and required regulatory fees for transactions that occur through such third party authorized retailers. Changes to a tax or



16:42
◀ AirTalk Wireless

SOS 📶 24



**Hi JERRY SOPER,**

Congratulations! Your eSIM is here and ready to be activated! Please find the essential information for your eSIM below:

Phone Number: **4246242517**

**eSIM QR Code:**



If you've already scanned the QR code, you're all set! If not, it's easy to get started following the instructions below:







 **Jerry Soper III <soperiiijerry@gmail.com>**

---

## Application pending

**AirTalk Wireless** <enrollment-support@airtalkwireless.com>                Mon, Jan 6 at 19:24
To: <SOPERIIIJERRY@gmail.com>



A leading FCC Licensed Lifeline Service Provider

---

# Your application is pending for review!



**Application**

**Pending for Review**

**Delivery**

**Dear JERRY SOPER,**

Your application WAT1729792431 is pending for review by California Lifeline Administrator.  Per California Lifeline Program rules, you are required to provide your identity and eligibility proof for the selected Lifeline Program Based or Income Based.

If you haven't done so, please upload it now by clicking the button below. You will receive another email notification once your application has been approved.

Upload Your Proof

Use the information below to login to your account:

Enrollment ID: **1729792431**
Password: **4916382823e9**

## Important Information

### California Lifeline application Process
*(the application process can take up to 7 -14 business days or sooner based on sufficient and valid eligibility documentation provided)*

Once the application is submitted for review by California Lifeline Administrator,the applicant will receive the application form in a PINK envelope in the mail within 3 weeks. Applicant MUST either use the **Online Process** or **Paper Process**.

- **Online Process**: apply online at www.californialifeline.com
  OR
- **Paper Process**: complete, sign, and submit her/his form by mail

**Where is my tracking number?**

Once your application is approve, please give us 7-10 business days for your order to be processed. Once it's been proceced, you'll be sent an email and an SMS with your tracking number. Make sure to check your inbox and spam folder.

**Can my account be terminated for non-usage?**

As per the Lifeline program's restrictions, you MUST use your AirTalk phone at least once a month (or once within thirty (30) consecutive days).

Here is how you can keep your AirTalk service active:

- Use your phone to send a text to a friend or family member
- Place or Receive a call to a friend or family member
- Use the free data (Disconnection from Wi-Fi) on your phone to surf the web, check social media, send or receive an email, watch a video, or use app & features that require data.

You can also contact AirTalk Wireless to confirm that you want to continue receiving Lifeline service.

- Please send an email to info@airtalkwireless.com. Include your name and enrollment ID (or your AirTalk phone number) in the subject line or body of the email.
- Call us toll-free at +1 (855) 655-3097 to speak with a Customer Support Representative.

Best Regards,

AirTalk Wireless Team




Call us: +1 (855) 924-7825



Contact us

**Get the AirTalk Wireless App**





Follow us on

   

Terms & Conditions | Privacy Policy | FAQ's

@2024.All rights reserved.

Not interested in email updates? You can unsubscribe from this list.

 **Gmail**

**Jerry Soper III <soperiiijerry@gmail.com>**

---

**Upgrade Plan Confirmed! Enjoy Your New AirTalk Wireless Plan!**

---

**AirTalk Wireless** <no-reply@airtalkwireless.com>
To: <SOPERIIIJERRY@gmail.com>

**Mon, Feb 10 at 16:15**

                A Leading FCC Licensed Lifeline Service Provider

---

## Upgraded Plan Payment Confirmation

Dear **JERRY SOPER.**

We are delighted to inform you that your payment for the upgraded AirTalk Wireless plan has been successfully processed!

Here's a quick overview of your new plan details:

Your new plan detail: **Lifeline Unlimited Plan [CA]**

Payment Information: **pi_3Qr78BAnw3mWEA4r0iZSGTOw**

Amount: **$39.25**

Plan period: **from 2025-02-10 to 2025-03-10**

---

For your convenience, we'll send you a reminder before your next payment is due. You can also set up auto-renewal to avoid any disruption in service.

**Please note:** If your next payment is unsuccessful, your plan will automatically revert to the standard **Lifeline Standard Plan[CA]** after your renewal date.

Thank you for choosing AirTalk Wireless!



 Contact us



Call us: +1 (206) 445-7825

or call +1 (855) 924-7825

**Get the AirTalk Wireless App**





Follow us on

   

Terms & Conditions | Privacy Policy | FAQ's

@2024.All rights reserved.

Not interested in email updates? You can unsubscribe from this list.